UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

BELLINI CONDOMINIUM ASSOCIATION,
INC., a Florida not for profit corporation,

    *Plaintiff*,

vs.

VILLAGE OF BAL HARBOUR,
FLORIDA, a Political Subdivision of the
State of Florida,

    *Defendant*.

_____/

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, BELLINI CONDOMINIUM ASSOCIATION, INC. ("Bellini" or "Plaintiff"), by and through its undersigned attorneys, and pursuant to § 28 U.S.C. 2201, brings this action for declaratory relief against Defendant, VILLAGE OF BAL HARBOUR, FLORIDA ("Village"), and states the following in support thereof:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Bellini Condominium Association, Inc., is a Florida not for profit corporation with its principal place of business located in Bal Harbour, Florida.

2. Defendant, the Village of Bal Harbour, is a political subdivision of the State of Florida and therefore subject to this Court's jurisdiction.

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331. Declaratory relief is authorized by 28 U.S.C. § 2201. This court has also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district because Plaintiff maintains its principal place of

1

business in this district, the City resides or is found within this district, a substantial part of the events or omissions giving rise to the claim have occurred within this district, and the property at issue is within this district.

## GENERAL ALLEGATIONS

A. Background

5. The recent catastrophic collapse of the Champlain Towers in Surfside, Florida has ignited significant concerns over the structural engineering and architectural design of high-rise residential buildings in Florida, whose structures are constructed underground and below pool areas analogous to that of Champlain Towers.

6. As such, pursuant to the applicable National Flood Insurance Program ("NFIP") regulations, underground parking garages in residential buildings located in areas designated as flood zone AE are prohibited, absent approval by the Federal Insurance Administrator.

7. Specifically, 44 C.F.R § 60.3 (c)(2), requires, *inter alia*, that:

> *[A]ll new construction* and substantial improvements *of residential structures within Zones* A1–30, *AE* and AH zones *on the community's FIRM have the lowest floor (including basement) elevated to or above the base flood level*, unless the community is granted an exception by the Federal Insurance Administrator for the allowance of basements in accordance with § 60.6(b) or (c).

(*emphasis added*).

8. Despite this clear restriction, the Village has approved the development plan for a new residential building located directly next door to Bellini in flood zone AE with an underground parking garage.

9. Gravely concerned by the significant life safety issues the illegal construction of the new residential building would pose in the wake of the collapse of Champlain Towers, Bellini requests a declaration that such approval was in violation of federal and local regulations and

2

therefore void as a matter of law.

### B. Village's Application and Approval Process for New Residential Project

10. On May 6, 2022, Carlton Terrance Owner, LLC ("CTO") submitted its application for the Architectural Review Board's ("ARB") review of its new residential development project known as the Residences of Bal Harbour (the "Project"), which described the Project as "a twenty-four (24) story new *residential building*. It will contain 61 dwelling units. There will be two (2) floors of basement for parking, loading and commercial; one (1) floor containing the lobby, amenities and commercial, and twenty-two (22) floors of residential." (*emphasis added*). A copy of the Architectural Review Board Application is attached hereto as **Exhibit "A"**.

11. The Project, to be located at 10245 Collins Avenue, Bal Harbour, Florida 33154, which directly neighbors the Bellini Condominium, is situated in the Village's Ocean Front District, which has been designated as *flood zone AE*.

12. In a thinly veiled effort to pack more units into the development Project and maximize profitability, while keeping the Project's height in compliance with the Village Code of Ordinances (the "Village Code"), CTO attempted several "end-arounds" of 44 C.F.R § 60.3 (c)(2) and the Village Code to be deemed "mixed-use" in order to be eligible to include an underground parking garage in the design in compliance with the applicable rules, laws and regulations.

13. First, it proposed a restaurant that would be open to the public, however that idea was quickly abandoned by CTO.

14. Second, CTO attempted to include a spa in the residential building that would be open to the public.

15. However, Village staff indicated that the Project's proposed spa amenity was not a permitted use under Village Code Sec. 21-281.

16. CTO considered seeking a Village Code text amendment to allow the spa amenity as a permitted use, but this avenue was quickly abandoned in order to avoid the requirement for a vote of the Village Council approving same.

17. With the plans for the proposed underground spa amenity now abandoned, CTO was forced to explore alternative avenues with the Village staff to try and achieve "mixed-use" classification for the Project, such that construction of the underground parking garage would be permitted.

18. In so doing, CTO proposed adding a "medical office" to the Project's lobby as a "convenience establishment" pursuant to Village Code Sec. 21-281.

19. Under the Village Code, "medical office" convenience establishments are permitted in multiple-family developments containing at least 100 or more dwelling units, provided their operations in multiple-family developments "*are for the primary use of the residents of the building and are used only as an ancillary and Accessory Use thereto for the day-to-day convenience of the residents*." Village Code Sec. 21-281(8). (*Emphasis added*).

20. Such "medical office" convenience establishments in multiple-family developments are subject to the following enumerated restrictions:

    a. Such convenience establishments shall be entered only from within the Principal Building.

    b. Such convenience establishments shall have no outside entrance or storefront.

    c. Such convenience establishments shall have no sign display, lighting or advertisement matter facing or visible from the western boundary of the district, or which may be facing or visible from a point on Lot 1 in the district west or south of such Hotel or multiple family building.

    d. The total amount of floor area devoted to convenience establishments shall not exceed ten percent of the aggregate

        floor area of the Principal Building in which it is located.

    e.    The sale, dispensing or storage of gasoline, oil, grease or automobile accessories is prohibited in this district.

*Id.*

21.    In a last-ditch attempt to salvage the Project, and obtain an anticipated ***Two Million Dollar ($2,000,000.00) "donation" from the developer as a condition of approval***, the Village applied an illogical, self-serving reading of the Village Code that obviated the requirement of having at least 100 dwelling units, and accepted CTO's implausible representation that the "medical office" convenience establishment -- intended for the primary use of the building residents -- would be "open to the public" to circumvent the safety restrictions set forth in 44 C.F.R § 60.3 (c)(2).

22.    Ignoring the fact that the Project only had 61 dwelling units as opposed to the 100 units required under the Village Code for multiple-family development convenience establishments, the Village Building Official Eliezer Palacio ("Mr. Palacio") deemed the Project a "mixed-use" building, thereby rendering 44 C.F.R § 60.3 (c)(2) inapplicable.

23.    With this determination, Mr. Palacio recommended that the ARB issue a Certificate of Appropriateness ("COA"), essentially clearing the path for approval to construct the residential Project with an underground parking garage. A copy of both the draft and finalized versions of Mr. Palacio's ARB Memorandum, which was considered in connection with the October 6, 2022 ARB Hearing pertaining to the Project is attached hereto as **Composite Exhibit "B"**.

24.    Bellini, as the neighboring property owner, objected that the inclusion of the proposed "medical office" convenience establishment under the circumstances was in violation of the Village Code and not a permitted use in a multiple-family condominium development such as the Project, and further, was insufficient to deem the Project, an otherwise residential building, as

a "mixed-use" to justify the building of an underground parking garage in contravention of 44 C.F.R § 60.3 (c)(2).

25. Despite Bellini's objection and stated concerns, on October 6, 2022, the ARB voted to issue Certificate of Appropriateness 2022-1006 for the Project.

26. In issuing the COA, the ARB considered and relied upon Mr. Palacio's ARB Memorandum, which included discussion of his determination that the mere inclusion of a "medical office" convenience establishment in the proposed residential condominium deemed the Project a "mixed-use" building for purposes of the applicable federal rules and regulations.

27. Upon appeal by Bellini, the ARB's decision to issue the COA for the Project was eventually affirmed by the Village Council at a quasi-judicial hearing on October 31, 2022, via the passing of Resolution 2022-1503.

28. Thereafter, on November 30, 2022, Bellini filed its Petition for Writ of Certiorari against the Village of Bal Harbour, Florida ("Petition"), requesting the Eleventh Judicial Circuit Court quash the Village's October 31, 2022 decision, nullifying Resolution No. 2022-1503, and remanding to the Village Council with instructions that the Project be deemed a residential building for all intents and purposes related to permitting and land use approvals.

29. The Petition argued, *inter alia*, that the Village Council's decision that the proposed "medical office" convenience establishment was a permitted use under the Village Code was a departure from the essential requirements of law.

30. As of June 27, 2023, the Eleventh Judicial Circuit Court rendered its opinion denying Plaintiff's Petition, but finding that Plaintiff's arguments regarding noncompliance with permitted zoning uses and the building code in violation of Village Code Sec. 21-281 were irrelevant and wholly inapplicable to an ARB Hearing and the subsequent appeal to the Village

Council, as the only subjects relevant to the jurisdiction of the ARB are architecture, design, or the Appearance Code.

31.     Subsequently, on July 18, 2023, the Village Manager issued two Council Memoranda recommending approval of Proposed Ordinances amending Chapter 21 of the Village Code. Per the Memoranda, the Proposed Ordinances were the result of policy questions which were highlighted by the ARB's approval and Village Council's affirmation of the Project. True and correct copies of the July 18, 2023 Council Memoranda are attached hereto as **Composite Exhibit "C"**.

32.     Crucially, within these Council Memoranda, the Village Manager concedes that "medical offices" are considered "convenience establishments" under the Village Code, and further recommends the adoption of a Proposed Ordinance removing the Village Code requirement that a multiple-family development contain at least 100 dwelling units to qualify to seek convenience establishment uses.

33.     Therefore, despite the Village's continued insistence that Bellini's interpretation of the Village Code was flawed, these Council Memoranda all but confirm Bellini was in fact correct all along, and that the Village merely relied upon its erroneous self-serving interpretation to approve the Project application and reap the benefits of the proffered $2,000,000.00 "donation."

34.     Nonetheless, as the Village failed to acknowledge Bellini's objections prior to the approval of the Project, arguing that the Project could be built as of right, the Parties remain in dispute as to whether the mere inclusion of the proposed "medical office" convenience establishment, without any exterior entrances, signage, or advertisements to attract non-residents, is: (i) permissible under Village Code Sec. 21-281 for the Project, a multiple-family development with less than one hundred (100) dwelling units; and (ii) legally sufficient to deem the Project, a

residential condominium building, as a "mixed-use," such that construction of the underground parking garage is permissible under 44 C.F.R § 60.3 (c)(2).

35. All conditions precedent to the filing of this action have either been satisfied or waived.

## COUNT I – DECLARATORY RELIEF
### (§ 28 U.S.C. 2201)

36. Plaintiff realleges paragraphs 1 through 35 as if fully set forth herein.

37. Village Code Sec. 21-281 discusses permitted uses for buildings located in the Village's Ocean Front District. Specifically, Code Sec. 21-281(7), Village of Bal Harbor provides *inter alia*:

> Medical and dental offices including services in such offices related to medical or dental care that are performed under the supervision of medical doctors or dentists. Such medical and dental offices shall be located in buildings as defined in subsections (1) and (2) and must meet the requirements of subsection (8) a through e of this section.

38. Village Code Sec. 21-281(8)(a)-(e) states:

> ***Convenience establishments in multiple-family developments containing at least 100 or more dwelling units, provided their operations in multiple-family developments are for the primary use of the residents of the building and are used only as an ancillary and Accessory Use thereto for the day-to-day convenience of the residents***. These convenience establishments in multiple-family developments are subject to the following restrictions:
>
> a. such convenience establishments shall be entered only from within the Principal Building.
>
> b. Such convenience establishments shall have no outside entrance or storefront.
>
> c. Such convenience establishments shall have no sign display, lighting or advertisement matter facing or visible from the western boundary of the district, or which may be facing or visible from a point on Lot 1 in the district west

8

       or south of such Hotel or multiple-family building.

    d. The total amount of floor area devoted to convenience establishments shall not exceed ten percent of the aggregate floor area of the Principal Building in which it is located.

    e. The sale, dispensing or storage of gasoline, oil, grease or automobile accessories is prohibited in this district.

(***Emphasis added***).

39. Notwithstanding these enumerated requirements, the parties are in dispute as to the correct interpretation of Village Code Sec. 21-281(7). Specifically, whether it is required that "medical office" convenience establishments be located within multiple-family developments containing a minimum of 100 dwelling units, such that the residential Project as currently approved is in violation of the Village Code

40. As such, there exists a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

41. The declaratory relief sought by Plaintiff deals with a present, ascertained, or ascertainable state of facts and ripe controversy as the COA has been issued for the Project, affirmed by the Village Council, and Mr. Palacio is now able to issue the requisite building permits for the Project, which is currently underway in the demolition process.

42. The powers, rights, and privileges of Plaintiff are dependent upon the facts and applicable law to the facts insofar as Plaintiff, as the current owner of the Bellini Condominium Association, possesses a right to ensure that its neighboring property is properly constructed in compliance with the Village Code to ensure the safety of its residents.

43. All adverse parties are presently before this Court as Plaintiff has incorporated the Village as named defendant to this request for declaratory relief.

44. The declaratory relief requested does not seek this Court's issuance of an advisory

opinion, but instead a *bona fide* declaration as to whether under the Village Code a "medical office" convenience establishment is a permitted use in the Project, a multiple-family development containing less than 100 dwelling units, and whether the Village may be subject to damages for wrongfully approving the Project's development and construction in violation of the Village Code.

**WHEREFORE**, Plaintiff, BELLINI CONDOMNIUM ASSOCIATION, INC., respectfully demands judgment from this Court for:

A. A declaration that the inclusion of the "medical office" convenience establishment in the Project, as approved by the Village, is not a permitted use as contemplated under Village Code Sec. 21-281;

B. A declaration that the Village's approval of the Project is *void ab initio* in violation of the Village Code; and

C. Any such other and further relief as this Court deems just and appropriate.

## COUNT II – DECLARATORY RELIEF
### (§ 28 U.S.C. 2201)

45. Plaintiff realleges paragraphs 1 through 35 as if fully set forth herein.

46. Pursuant to 44 C.F.R § 60.3(c)(2), residential structures are prohibited from having underground parking garages, absent approval by the Federal Insurance Administrator.

47. Notwithstanding CTO's representation to the Village that it intended to develop a new "residential building," the Village classified the Project as "mixed-use" solely due to CTO's inclusion of a "medical office" convenience establishment in the proposed condominium.

48. As such, the parties are in dispute as to whether the mere inclusion in the residential condominium Project of a "medical office" convenience establishment, which pursuant to the Village Code, must be without any exterior entrances, signage, or advertisements to attract non-residents, and intended for the primary use of the residents of the building only as an ancillary and

accessory use for the day-to-day convenience of the residents, is sufficient to deem the Project, an otherwise entirely residential condominium building as a "mixed-use," such that it may be constructed to include an underground parking garage.

49. As such, there exists a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

50. The declaratory relief sought by Plaintiff deals with a present, ascertained, or ascertainable state of facts and ripe controversy as the COA has been issued for the Project, affirmed by the Village Council, and Mr. Palacio is now able to issue the requisite building permits for the Project, which is currently underway in the demolition process.

51. Plaintiff also possesses the right to ensure its structural architecture's integrity, safety, and flood prevention measures for the purpose of safeguarding its residents, invitees, patrons, and social guests.

52. Moreover, Plaintiff's power to safeguard its residents from architectural construction in violation of 44 CFR § 60.3(c)(2), in the wake of the Champlain Towers collapse, depends directly on the existing aforementioned factual controversy and law applicable to those facts.

53. All adverse parties are presently before this Court as Plaintiff has incorporated the Village as named defendant to this request for declaratory relief.

54. The declaratory relief requested does not seek this Court's issuance of an advisory opinion, but instead a *bona fide* declaration as to whether the residential condominium Project may be constructed to include an underground parking garage in compliance with 44 CFR § 60.3(c)(2), which does not allow for the construction of underground parking in "residential" buildings, and whether the Village may be subject to damages for wrongfully approving the Project's

development and construction in violation of this regulation.

**WHEREFORE**, Plaintiff, BELLINI CONDOMNIUM ASSOCIATION, INC., respectfully demands judgment from this Court for:

A. A declaration that the Project is a residential building;

B. A declaration that because the Project is a residential building, the Project as approved is prohibited from being developed to include an underground parking garage as violative of 44 CFR § 60.3(c)(2);

C. A declaration that the Village's approval of the Project is *void ab initio* in violation of 44 CFR § 60.3(c)(2); and

D. Any such other and further relief as this Court deems just and appropriate.

Dated: July 19, 2023                                             Respectfully submitted,

                                                                 GOVERNMENT LAW GROUP PLLC
                                                                 *Counsel for Plaintiff*
                                                                 200 South Andrews Avenue, Suite 601
                                                                 Ft. Lauderdale, Florida 33301
                                                                 Telephone: (954) 909-0592
                                                                 Email: jisrow@govlawgroup.com
                                                                         aingber@govlawgroup.com
                                                                         pleadings@govlawgroup.com

                                                                 By: */s/ Jordan B. Isrow*
                                                                         Jordan B. Isrow, Esq.
                                                                         Florida Bar No. 92782
                                                                         Andrew J. Ingber, Esq.
                                                                         Florida Bar No. 1028001