UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-22703-BLOOM/Torres

BELLINI CONDOMINIUM
ASSOCIATION, INC.,

    Plaintiff,

v.

VILLAGE OF BAL HARBOUR, FLORIDA, a Political
Subdivision of the State of Florida,

    Defendant.
_____/

**ORDER ON MOTIONS TO DISMISS**

**THIS CAUSE** is before the Court upon Intervenor Defendant Carlton Terrace Owner, LLC's ("Carlton Terrace") and Defendant Village of Bal Harbour, Florida's ("Bal Harbour"), (together, "Defendants") Motions to Dismiss for Lack of Subject Matter Jurisdiction, ECF Nos. [24] and [25], ("Motions"). Plaintiff Bellini Condominium Association, LLC, ("Plaintiff") thereafter filed a Response, ECF No. [40], Carlton Terrace filed a Reply, ECF No. [42] and Bal Harbour filed a Reply, ECF No. [43][1], (together, "Replies"). The Court has reviewed the Motions, all supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motions are granted.

**I.    BACKGROUND**

This is an action for declaratory relief brought by a condominium association against Bal Harbour related to plans to develop a mixed-use project, allegedly in violation of 44 C.F.R. § 60.3(c)(2). ECF No. [20]. Carlton Terrace moved to intervene as a Defendant, which

this Court granted. *see* ECF Nos. [11] and [14]. Carlton Terrace is the owner of the property at 10245 Collins Avenue in the Village of Bal Harbour, Florida ("Property"). On May 22, 2022, it applied to the Village's Architectural Review Board for a Certificate of Appropriateness for the Residence of Bal Harbour ("Project"), a mixed-use project comprising sixty-one units and a medical office to be constructed on the Property. Plaintiff is the condominium association for the Bellini, which is located next to the Property. On October 6, 2022, the Village's Architectural Review Board held a hearing, rejected the Plaintiff's objections, and issued a Certificate of Appropriateness. Plaintiff thereafter appealed to Bal Harbour's Village Council, which affirmed the Architectural Review Board's decision.

Plaintiff's Amended Complaint seeks the following declaratory judgment:

Count I: (A) a declaration that the inclusion of the "medical office" convenience establishment in the Project, as approved by the Village, is not a permitted use as contemplated under Village Code § 21-281; and (B) a declaration that the Village's approval of the Project is *void ab initio* in violation of the Village Code.

Count II: (A) a declaration of the proper interpretation and application of FEMA and federal regulations including, but not limited to, 44 C.F.R. § 60.3(c)(2); (B.) "a declaration that the Project is a residential building;" (C.) "a declaration that because the Project is a residential building, the Project as approved is prohibited from being developed to include an underground parking garage as violative of 44 C.F.R. § 60.3(c)(2);" and (D.) "a declaration that the Village's approval of the Project is in contravention of the requirements of Title 44 Code of Federal Regulations and *void ab initio*." ECF No. [20] at 13-14, and 16.

---

[1] Bal Harbour's Motion to Dismiss and Reply "join[ed] and adopt[ed] the arguments and authorities cited by Defendant Carlton Terrace Owner, LLC." See ECF Nos. [25] and [43].

Plaintiff seeks declaratory relief out of concern that Bal Harbour has failed to adequately enforce the National Flood Insurance Program (NFIP) regulations, creating the risk of probation. *Id*. ¶ 14. If Bal Harbour is placed on probation and then "fails to remedy its noncompliance during the probationary period" Plaintiff may be at risk of not being able to renew its flood insurance policies and potential exclusion from federal disaster assistance related to flooding. *Id*. ¶ 15.

Carlton Terrace seeks dismissal of the Amended Complaint and argues that this Court lacks subject matter and statutory jurisdiction over this matter, and neither the Federal Emergency Management Agency's (FEMA) regulation for floodplain management, the National Flood Insurance Program (NFIP), nor 44 C.F.R. § 60.3 creates a private right of action. ECF No. [24] at 4-13. Additionally, Carlton Terrace argues that Plaintiff lacks standing, as it is in no danger of suffering any cognizable injury and its requested declaration would have no effect on FEMA, the ultimate arbiter of compliance with NFIP voluntary floodplain-management mechanisms. As such, any ruling on the merits would amount to an impermissible advisory opinion. *Id*. at 13-17. Bal Harbour similarly argues that the Court lacks subject matter jurisdiction and Plaintiff lacks standing. *See generally*, ECF No. [25].

Plaintiff responds that the Court has subject matter jurisdiction under the Declaratory Judgment Act and has not pled any claims for affirmative relief pursuant to 44 C.F.R. § 60.3 (c)(2) or the NFIP. Plaintiff asserts that federal-question jurisdiction exists over a declaratory judgment action if a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law, citing *Patel v. Hamilton Med. Center, Inc*, 967 F.3d 1190 (11th Cir. 2020). Plaintiff argues that it has a private right of action primarily because Carlton Terrace *could* file a coercive action arising under federal law

against Plaintiff, as conceded by Carlton Terrace in its Motion to Intervene, and as Bal Harbour is an indispensable party. ECF No. [40] at 3-4. Plaintiff also contends that it established standing through the issues in its Amended Complaint and due to the alleged non-objection by Defendants regarding Plaintiff's status during a quasi-judicial hearing. *Id*. at 4. For those reasons, Plaintiff contends that this Court has subject matter jurisdiction, and therefore supplemental jurisdiction over its state-law claims. *Id*. at 11. Defendants reply that Plaintiff failed to identify a federal question to satisfy jurisdiction and failed to establish standing. ECF Nos. [42] and [43].

## II. LEGAL STANDARD

### a. Motion to Dismiss

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.") (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)).

### b. Jurisdiction

"A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017) (quoting *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1305 (11th Cir. 2016)) (internal quotations omitted). Regarding federal question jurisdiction, the district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C § 1331 (2012). To determine whether a cause of action "arises under" federal law for purposes of Section 1331, the district court applies the "well-pleaded complaint rule," which requires that the Court examine "what necessarily appears in the plaintiff's statement of his own claim[.]" *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (citation omitted). As such, "federal jurisdiction generally exists 'only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Id.* at 831 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Federal courts are "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). Unless "provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

28 U.S.C. § 1367(a). Accordingly, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." 168 F.3d at 410.

      **c.     Declaratory Judgment**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (quoting *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995)). "That a plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, does not relieve him of the burden of satisfying the prerequisites for standing, since a declaratory judgment may only be issued in the case of an actual controversy." *Id.* (quoting *Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (quotation marks omitted).

      **d.     Standing**

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301–02 (11th Cir. 2008) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). Critical to the case-or-controversy requirement of Article III is an inquiry into standing (*id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555,

560 (1992))), which "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005

The party invoking federal jurisdiction bears the burden of proving the essential elements of standing. *Lujan*, 504 U.S. at 561; *Elend v. Basham*, 471 F.3d 1199, 1205–06 (11th Cir. 2006). However, "[i]t is not enough that 'the [plaintiff]'s complaint sets forth facts from which [the Court] could imagine an injury sufficient to satisfy Article III's standing requirements.'" *Elend*, 471 F.3d at 1206 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) (citations omitted)). Rather, a plaintiff must satisfy three constitutional prerequisites of standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*DiMaio*, 520 F.3d at 1301–02 (11th Cir. 2008) (citing *Lujan*, 504 U.S. at 560–61); *see also Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility."); *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003) ("To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.").

### III.   DISCUSSION

In their Motions, Defendants proceed with an analysis of Count II before Count I. The Court reviews the arguments in that order.

### i.   Count II - Jurisdictional Deficiency

Carlton Terrace argues that Plaintiff's Amended Complaint should be dismissed because the Declaratory Judgment Act "affords declaratory relief only where federal jurisdiction is otherwise available," ECF No. [24] at 5, and points out that the Declaratory Judgment Act it is not its own a source of, nor does it enlarge, jurisdiction. *Id*. For support, Carlton Terrace also cites *Patel v. Hamilton Med. Ctr., Inc.*, 967 F.3d, 1190, 1194 (11th Cir. 2020) holding that a "plaintiff must assert 'an underlying ground for federal court jurisdiction.'" (citing *Household Bank v. JFS Grp*., 320 F.3d 1249, 1253 (11th Cir. 2003)); *See also* 28 U.S.C. § 2201(a) (empowering district courts to enter declaratory judgments in "case[s] of actual controversy within [their] jurisdiction"). Additionally, the allegations must have a basis in a federal law enforceable through a private right of action. *Patel*, 967 F.3d at 1190. In *Patel*, the Eleventh Circuit held for a declaratory judgment action, federal question jurisdiction exists if "a plaintiff's well-pleaded complaint alleges facts demonstrating the defendant could file a coercive action arising under federal law." *Id*. (citing *Household Bank*, 320 F.3d at 1259).

Carlton Terrace argues that Plaintiff fails to allege that a federal statute was violated because the allegations in Count II of its Amended Complaint rest on a regulation promulgated by FEMA, 44 CFR § 60.3(c)(2). ECF No. [24] at 6. Carlton Terrace contends this regulation contains no prohibitions, which is fatal to Plaintiff's Amended Complaint. *Id*. at 6-7. Instead,

§ 60.3 only establishes criteria for floodplain-management ordinances that communities[2] must adopt if they voluntarily elect to participate in the NFIP. *Id.*; *See also* 44 C.F.R. § 60.3. Carlton Terrace asserts that § 60.3 is not a land-use restriction, it prohibits nothing, and applies only to "communities" not individual property owners. ECF No. [24] at 7. Defendants assert that § 60.3 does not grant a private right of action in federal court *Id*. 44 C.F.R. § 60.3(c)(2) states:

> (c) When the Federal Insurance Administrator has provided a notice of final flood elevations for one or more special flood hazard areas on the community's FIRM and, if appropriate, has designated other special flood hazard areas without base flood elevations on the community's FIRM, but has not identified a regulatory floodway or coastal high hazard area, the community shall:
>
> (2) Require that all new construction and substantial improvements of residential structures within Zones A1–30, AE and AH zones on the community's FIRM have the lowest floor (including basement) elevated to or above the base flood level, unless the community is granted an exception by the Federal Insurance Administrator for the allowance of basements in accordance with § 60.6 (b) or (c);

Carlton Terrace cites to *Alexander v. Sandoval*, 532 U.S. 275 (2001) to support its argument that, as a regulation, there is no reading of § 60.3 which permits a private right of action. *Alexander* held that "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. Carlton Terrace further argues that courts have specifically refused to conclude § 60.3 creates a private right of action, citing *Billie v. Village of Channahon*, No. 20-cv-3294, 2021 WL 2311966 (N.D. Ill. June 7, 2021) and *Emody v. Manning*, No. 11-42-DLB, 2011 WL 6258300 (E.D. Ky. Dec. 15, 2011) for support.

In *Billie*, residents sued the Village for violation of their constitutional and statutory rights, in part, under the National Flood Insurance Act of 1968 ("NFIA"),

---

[2] A community is defined as "any State or area or political subdivision thereof, or any Indian tribe or authorized tribal organization, or Alaska Native village or authorized native organization, which has authority to adopt and enforce flood plain management regulations for the areas within its jurisdiction." 44 C.F.R. § 59.1.

42 U.S.C. § 4001 et seq. The plaintiffs' homes flooded periodically, and they argued that the village allowed their homes to be built in violation of the village ordinance requiring compliance with regulations of the NFIP, including 44 C.F.R. § 60.3. *Billie v. Village of Channahon*, No. 20-cv-3294, 2021 WL 2311966, at *2 (N.D. Ill. June 7, 2021). The court determined that § 60.3 does not create a private right of action, instead it details best practices municipalities must implement to receive funds through NFIP. *Id*. at *8.

Similarly, in *Emody*, plaintiffs sued their county for allegedly failing to properly maintain a water culvert adjacent to their property resulting in periodic flooding. 2011 WL 6258300, at *1. Their claims were brought under 42 U.S.C. § 1983 for violations of the NFIA. *Id*. Plaintiffs' complaint was dismissed as that court determined that § 60.3 does not create a right enforceable through § 1983, and the enabling statute has no language creating rights. *Id*. at *5-6. Like *Billie*, the court found the provisions only pertained to policy and practice. *Id*. at *5

Carlton Terrace urges that, as *Billie* and *Emody* resolved NFIP claims through 42 U.S.C. § 1983 rather than through the Declaratory Judgment Act, an analysis to determine whether an implied right of action exists is warranted. ECF No. [8] at 7-8; *See also Emody*, 2011 WL 6258300, at *4. This requires an examination of (1) the statutory text for "'rights-creating' language;" (2) "the statutory structure within which the provision is embedded;" and (3) legislative history and context if the prior two elements are not conclusive. *Love v. Delta*, 310 F.3d 1347, 1352 (11th Cir. 2002). Carlton Terrace argues that Plaintiff has failed to cite any language in the regulations whereby a right was created. Furthermore, Carlton Terrace contends that Plaintiff must establish that it is part of special class upon which a right was directly conferred. *Id*. at 1352. Plaintiff has not and cannot establish this, as courts have consistently found the NFIA does not benefit a "special class" and that the federal treasury was more of an

intended beneficiary than private parties to help alleviate economic burdens due to disaster relief. *See* 42 U.S.C. § 4001; *Till v. United Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. 1981); *See also Hofbauer v. Nw. Nat. Bank of Rochester, Minn.,* 700 F.2d 1197, 1200 (8th Cir. 1983).

Carlton Terrace argues that the next inquiry to determine whether an implied right of action exists also fails as § 4102 created a voluntary structure for the NFIP which bypassed FEMA as the enforcing body, laying the responsibility for floodplain management with the communities themselves. ECF No. [24] at 11. Carlton Terrace contends that the existence in the NFIA of express private rights of action in certain parts of the act demonstrate that Congress did not imply the right elsewhere. *Id*. at 12. Furthermore, it argues that ample case law supports its contention because "when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." *Till*, 653 F.2d at 160. Carlton Terrace maintains courts have concluded that as Congress explicitly created private rights of action in 42 U.S.C. §§ 4053, 4072, the "silence" as to a right of action in § 4102 is "controlling." *In re Wild*, 944 F.3d 1244, 1260 (11th Cir. 2021) (quotation omitted).

Plaintiff responds that subject matter jurisdiction exists, and Defendants' arguments are another "disingenuous attempt to foreclose Plaintiff of any meaningful opportunity to challenge [Bal Harbour's] unlawful approval of the Project." ECF No. [40] at 2. Plaintiff concedes that it cannot plead "claims for affirmative relief pursuant to 44 C.F.R. § 60(3)(c)(2) or the NFIP" because it has no ability "to seek recourse or submit a violation with FEMA." *Id*. at 2. Absent that recourse, Plaintiff seeks a declaratory judgment upon the belief it could be subject to damages and sanctions under the NFIP. *Id*.

Plaintiff asserts that Defendants misconstrue *Patel* and therefore misstate the standard for jurisdiction for a declaratory judgment action. *Id*. Plaintiff argues that *Patel* held "federal-

11

question jurisdiction exists 'over a declaratory judgment action if. . . a plaintiff's well-pleaded complaint alleges facts demonstrating the *defendant* could file a coercive action arising under federal law.'" *Id*. (emphasis added); 967 F.3d at 1194. Applying this standard, Plaintiff argues that it has alleged facts that Carlton Terrace, as a Defendant, could file a coercive action against Plaintiff "to defend its constitutionally protected property rights." ECF No. [40] at 3. Plaintiff argues that Carlton Terrace's Motion to Intervene was a coercive action based upon the allegations in the Amended Complaint. *Id*. As such, a declaratory judgment action is proper and one that Carlton Terrace cannot now challenge. *Id*.

Carlton Terrace replies that Plaintiff obfuscates the holding in *Patel* regarding declaratory judgments, and Carlton Terrace's successful motion to intervene did not create subject matter jurisdiction. It argues that the Declaratory Judgment Act does not enlarge jurisdiction and Plaintiff's assertion that the intervention in this action creates subject matter jurisdiction is simply wrong. *Id*. "Intervention. . . cannot create jurisdiction if none existed before." *Nat'l Ass'n of State Util. Consumer Advocs. v. F.C.C.,* 457 F.3d 1238, 1250 (11th Cir.), *opinion modified on denial of reh'g*, 468 F.3d 1272 (11th Cir. 2006). Carlton Terrace argues that it intervened only to address the jurisdictional issue, not to litigate upon merits or raise a different action; it made no assertion that subject matter jurisdiction existed because it is powerless to do so. ECF No. [42] at 3.

The Court agrees with Carlton Terrace. Plaintiff fails to allege an underlying cause of action to support its declaratory judgment action. The text of 44 C.F.R. § 60.3 fails to provide subject matter jurisdiction. Rather, Plaintiff asks this Court for a declaratory judgment as to a regulation that communities may participate in voluntarily. That regulation does not create any prohibitions or a private right of action that would permit Plaintiff to assert a claim for relief.

Moreover, the enabling statute, 42 U.S.C. § 4102 is designed to encourage the development of flood-plain zoning for improved development. The relevant sub header in this enabling statute is "Development and comprehensive *criteria designed to encourage* adoption of adequate State and Local measures." 42 U.S.C. § 4102(c) (emphasis added). It is upon the "the basis of such studies and investigations, and other such information" that the Administrator "where necessary" shall encourage adoption of local rules. *Id*. Similarly, 44 C.F.R. § 60.3 only provides for the creation of standards that a community must adopt for purposes of the NFIP which are dependent on the characterization of the building (here, mixed use or residential). These are merely criteria and neither § 60.3 nor § 4102 give rise to a federal question under the laws of the United States. Accordingly, the Court finds that it lacks subject matter jurisdiction and "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Univ. of S. Ala.*, 168 F.3d at 409, 410 (11th Cir. 1999).

### ii.  Count II - Plaintiff Lacks Standing

Carlton Terrace contends that even if Plaintiff had established federal question jurisdiction, it lacks standing to bring this action before this Court. ECF No. [24] at 14. For support, Carlton Terrace cites to *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243 (11th Cir. 2014) to assert that establishing standing requires a showing of "(1) an injury in fact that is concrete, particularized, and either actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable judicial decision will redress the injury." *Id*. at 245. For purposes of a declaratory judgment, a plaintiff must show "a substantial likelihood of a future injury." *A&M Gerber Chiropractic LLC v. GEICO Gen Ins. Co.*, 925 F.3d 1205, 1210-11 (11th Cir. 2019). Carlton Terrace argues that Plaintiff fails the injury and causation prongs as it cannot establish a private

right of action and as Plaintiff's injury is hypothetical and conjectural. ECF No. [24] at 14-15 (citing *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232-33 (11th Cir. 2019)). Carlton Terrace asserts that Plaintiff only alleges distant possibilities: if FEMA determines that the Project violates a village ordinance necessary to comply with the minimum NFIP criteria, then the Village could be subject to probation. *Id*. at 14; ECF No. [20] ¶ 14. The next set of possibilities along the inference chain requires FEMA to place Bal Harbour on probation, and if Bal Harbour fails to remedy the noncompliance during the probationary period, at that point Plaintiff may face a risk of insurance impairment. *Id*. at 15.

Carlton Terrace argues that Plaintiff also fails to establish traceability of the alleged injury, citing *City of Myrtle Beach v. Buchannon Motels, LLC*, No. 10-CV02884, 2012 WL 123133 (D.S.C. Jan. 17, 2012) for support. In *City of Myrtle Beach*, the City sought a declaratory judgment that the defendants violated FEMA's NFIP regulations and sought injunctive relief. *Id*. at *2. Despite a determination by FEMA of noncompliance, the *Myrtle Beach* court held that injury was not certain because the related provisions in 44 C.F.R. § 73.3 allows communities and compliant properties to remain eligible for subsidized insurance while excluding non-compliant properties. *Id*. at *2 (citing 44 C.F.R. § 73.3). Therefore, Carlton Terrace reasons that the *City of Myrtle Beach* supports its argument that Plaintiff has alleged a speculative injury untraceable to the Project and Defendants. ECF No. [24] at 15. Furthermore, any potential injury to Plaintiff would arise from actions taken by FEMA, a third party not in this action, *Id*. Should FEMA make a determination of noncompliance here, injury would be uncertain given the process pursuant to C.F.R. § 73.3 whereby compliant properties can remain eligible for NFIP. *Id*.; *See City of Myrtle Beach*, 2012 WL 123133, at *2.

Carlton Terrace next addresses Plaintiff's argument that it has a right to protect its residents against a neighboring property because allegations it violates § 60.3(c)(2) implicates "structural. . . integrity, safety, and flood prevention risks" sufficient to establish standing. ECF No. [24] at 16. Carlton Terrace argues that neither § 60.3 nor its enabling statute 42 U.S.C. § 4102 are building codes nor land use restrictions. *Id*. Rather, the regulation is "a volunteer program designed to make subsidized flood insurance available to those willing to be subjected to reasonable community-based land-use restrictions." *Id*. Furthermore, Carlton Terrace argues that Plaintiff failed to allege facts indicating the Project has any safety issue, or that Plaintiff is likely to suffer an injury, and therefore fails to establish standing. *Id*.; *See also Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 976 (11th Cir. 2005).

Plaintiff responds that it has standing, in part, due to events at a hearing before the Village Council and the Architectural Review Board. ECF No. [40] at 4. There, Plaintiff requested "party intervenor" or "qualified intervenor" status, terms which indicate that Plaintiff has "more at stake than just your random member of the general public." *Id*. The Village attorney stated that per Village Code, the Architectural Review Board determines which entities are granted intervenor status. *Id*. Defendants did not object. *Id*. at 5. Plaintiff argues this non-objection was an acknowledgment by Defendants that Plaintiff has standing to challenge the Project's approval. *Id*. Additionally, Plaintiff also argues that it was granted intervenor status at a subsequent quasi-judicial hearing before the Village Council, also without objection by Defendants. *Id*. On a related appeal in the Eleventh Judicial Circuit in and for Miami-Dade County, that court acknowledged Plaintiff's standing to challenge the Project's approval at the quasi-judicial hearing. *Id*.; *See Bellini Condominium Assoc., Inc., v. Village of Bal Harbour, et al.*, No. 2022-77-AP-01 at 4-5 (Fla. 11th Cir. Ct. App. June 27, 2023). Plaintiff asserts this state

court determination means "any objection as to Plaintiff's standing was waived." ECF No. [40] at 5.

Moreover, Plaintiff responds that Defendants' reliance on *City of Myrtle Beach* is misplaced. Plaintiff points out that, in *City of Myrtle Beach*, the community sought a declaration that a private property owner was in violation of NFIP. Here, Plaintiff alleges that the community itself has created a risk of sanctions by FEMA. ECF No. [40] at 8. Therefore, Plaintiff argues that potential sanctions would be levied against all in the community, including Plaintiff, and not just Carlton Terrace. *Id*.

Plaintiff concedes that Carlton Terrace is "partially correct" that NFIP regulations are designed to further a voluntary program providing subsidized flood insurance based upon reasonable community-based land-use restrictions. *Id*. Nevertheless, an "important objective" of the NFIP is to protect buildings constructed within special flood zone areas from damage caused by floods. *Id*. For support, Plaintiff attaches *FEMA Technical Bulletin 2, Flood Damage-Resistant Materials Requirements (2008),* and reasons that NFIP requirements include minimum building design and construction standards that apply to the Project. Plaintiff also attaches the *FEMA Technical Bulletin 6, Requirements for Dry Floodproofed Below-Grade Parking Ares Under Non-Residential and Mixed-Use Buildings (January 2021)* for further support that inherent in Title 44 are minimum building design and construction standards. *Id*. at 8-9, Exhibit D. Plaintiff argues that FEMA Bulletin 6 indicates that, even when designed in accordance with NFIP standards, dry floodproofed underground parking areas "may sustain significant structural damage if floodwater rises higher than anticipated in the designs." *Id*. at 9. Plaintiff contends this implicates safety concerns "such that there exists the substantial likelihood that Plaintiff will suffer damage as a result" of the Project. *Id*.

Plaintiff contends that Defendants cannot dispute that the Project is unsafe because at the motion to dismiss stage, Plaintiff's well-pled allegations must be accepted as true, and technical issues are not ripe for debate. *Id*. Finally, Plaintiff argues that its standing was "legitimized" by the unanimous passing of Village ordinances prohibiting construction of certain residential buildings from having below-grade parking structures, removing requirements to seek convenience establishment uses, and "removing medical and dental convenience establishment uses from the Village Code." *Id.* Plaintiff reasons that, as these ordinance updates address the issues it has raised, its standing was legitimized. *Id*.

Carlton Terrace replies that any purported standing stemming from a meeting before the Village Council, or any other forum, is not Article III standing required for an action before this Court. ECF No. [42] at 4. For support, Carlton Terrace cites *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), in which the Supreme Court held that "[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court." (citations omitted). *Id*. at 805. *See also Knowledge Ecology Int'l v. Nat'l Insts. Of Health*, PJM 18-1130, 2019 WL 1585285, at *5 (D. Md. Apr. 11, 2019) ("standing to appear before an administrative agency is different from standing to appear before an Article III court"). Furthermore, waiver of standing is not possible because standing is not subject to waiver. *United States v. Hays*, 515 U.S. 737, 742 (1995).

Carlton Terrace further asserts that any potential loss of flood insurance remains conjectural and hypothetical, and Plaintiff has suffered no injury. Moreover, a declaration regarding § 60.3(c)(2) would have no effect on Plaintiff as Bal Harbour would remain free to permit the Project to proceed. The development of the Project includes potential actions of non-defendants FEMA and NFIP which cannot be used to establish standing. *Id*. Carlton Terrace

points out that the allegations of harm or general safety were not raised in the Amended Complaint as a justification to establish standing and did not address the FEMA Bulletins directly. *Id*. Furthermore, any such harm would affect Carlton Terrace as owner of subject property, not Plaintiff who has no ownership interest in the Project, and a safety concern is not a threat to Plaintiff as a neighboring building. *Id*. For support, Carlton Terrace cites to *Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) that "the injury in fact test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Id*. at 563. Therefore, absent a concrete and imminent injury, Carlton Terrace maintains that plaintiff cannot establish standing.

The Court finds that Plaintiff has failed to establish standing in this action. As an initial matter, Plaintiff's argument that Defendants acknowledged its standing during a Village Council and Architectural Review Board meeting by *not* objecting to Plaintiff's status in that hearing has no bearing on Article III standing. Moreover, Plaintiff's attempt to add an argument regarding safety concerns is unavailing as that contention was not alleged in its Amended Complaint. The Eleventh Circuit has "repeatedly [] held that plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x. 657, 665 (11th Cir. 2015) (citing *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009)). *See also Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016). Moreover, Plaintiff's reference to FEMA Bulletin 6, that a dry floodproofed underground parking area *may* sustain damage *if* water rises above a level anticipated by an approved design, ostensibly in the basement of the Project, addresses hypothetical events that do not lead to a case or controversy.

Article III standing requires showing "(1) an injury in fact that is concrete, particularized, and either actual or imminent; (2) a causal connection between the injury and the conduct

complained of; and (3) a likelihood that a favorable judicial decision will redress the injury." *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243, 245 (11th Cir. 2014). Here, Plaintiff has not shown a concrete, particularized injury that is actual or imminent. Plaintiff has only shown that a possible chain of events may occur, which includes non-Defendant entities, that *could* lead a potential probationary period during which Bal Harbour *could* still remedy before any change in insurance would occur.

### iii. Count I- No Supplemental Jurisdiction

Count I asserts only declaratory judgment claims concerning Bal Harbour's local Village Code. Carlton Terraces argues that supplement jurisdiction over the state-law claims fail because this Court lacks subject matter jurisdiction over the claims in Count II. For support, Carlton Terrace cites to *Bernath v. Am. Legion*, 704 F. App'x 917 (11th Cir 2017) where "the district court lacked jurisdiction based on a question of federal law or on diversity of citizenship [] it had to 'dismiss [plaintiff's] state law claims.'" *Id*. at 918 (quoting *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999)). *See also* 28 U.S. Code § 1367.

Plaintiff responds that this Court has supplemental jurisdiction over the state-law claims in Count I as it has subject matter jurisdiction over Count II and properly established standing in this action.

The Court has already determined that Plaintiff has failed to establish federal-question jurisdiction and constitutional standing as to Count II. As such, Count I's state-law ordinance claims must be dismissed for lack of supplemental jurisdiction.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motions to Dismiss, **ECF Nos. [24] and [25], are GRANTED**.

2. Plaintiff's Amended Complaint, **ECF No. [20] is DISMISSED WITHOUT PREJUDICE**.

3. Final judgment in favor of Defendants will be entered separately.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 25, 2024.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record